UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 20-62339-CIV-ALTMAN/HUNT

LIONEL JEAN CHARLES,

                Petitioner,

v.

STATE OF FLORIDA,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court upon a Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("Petition") filed by Lionel Jean Charles.  ECF No. 1, 4.  The Honorable Roy K. Altman referred the Petition to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636.  For the following reasons, the undersigned recommends the Petition be DENIED.

### BACKGROUND

#### A.  Factual Background

According to evidence presented at trial, on December 25, 2003, A.H.[1] was with her boyfriend—the victim, Woalle Felix—and friends, standing next to a car parked outside of her family's home between 8:00 and 9:00 p.m.  ECF No. 14 at 127–29.  A car approached the group and stopped at an angle in the middle of the road.  ECF No. 14 at

---

[1] A.H. was a minor at the time of the incident, and the petition, response, and related documents continue to refer to her by her initials.

134.   A person exited the vehicle with a rifle, and A.H. recognized the person as Jean Charles, someone she frequently saw in the neighborhood.   Jean Charles had also instigated a minor incident involving a verbal exchange with the same group of people two weeks before the shooting.  ECF No. 14 at 118, 122, 136–38.

The victim ran, but he was shot as he attempted to jump a gate.  ECF No. 14 at 138–39.  A.H. watched Jean Charles walk away, then she began screaming. ECF No. 14 at 143, 146.  A.H.'s father, Houston, heard gunshots outside, then heard his daughter screaming, "He killed my boyfriend."  ECF No. 14 at 88–89.  She named the man as "Lionel," a person Houston knew as "Dred" and whom he had seen every other day since he was a little boy.  ECF No. 14 at 88.  Samson Bruno was with A.H. and the victim both during the incident two weeks prior and during the shooting.  ECF No. 14 at 190, 200–201.  In his statement given directly after the shooting and during his testimony at trial, Bruno stated he neither saw the face of the shooter nor recognized him.  ECF No. 14 at 218–19.

Just before midnight on December 25, Jean Charles arrived at his cousin Luto Innocent's house.  ECF No. 14 at 281.  Innocent testified he usually did not see Jean Charles more than a handful of times a year.  ECF No. 14 at 282–83.  Jean Charles stayed with Innocent a few days, and Innocent noticed Jean Charles had a roll of cash. ECF No. 14 at 301.  Jean Charles spoke with Linndale Saunders on December 26.  ECF No. 14 at 550–51.  Saunders testified Jean Charles told him he had shot someone and needed money to leave the state.  ECF No. 14 at 561–62.  Saunders was an FBI informant and attempted to coordinate a meeting to have Jean Charles arrested. ECF No. 14 at 564.  Although those coordinated meetings did not lead to an arrest, police were able to

detain Jean Charles following surveillance of a vehicle Jean Charles was driving, a car pursuit, and subsequent car crash.  ECF No. 14 at 768, 774–75, 793–97.

The defense presented the testimony of Christopher O'Neal, who explained Jean Charles was with him the entirety of December 25.  ECF No. 14 at 843–44, 845.  O'Neal, Jean Charles, and a group of others rode dirt bikes throughout the day until after 5:30 p.m., and, although Jean Charles left briefly, he returned to O'Neal's house around 8:00 p.m., and they were together with a group of people until after 11:00 p.m.  ECF No. 14 at 848–50.  The defense also drew attention to the fact that a witness to the shooting, Samson Bruno, did not recognize Jean Charles and could not select him from a photo group.  ECF No. 14 at 878–79.

### B.  Procedural Background

Jean Charles was charged with first-degree murder for causing the death of Woalle Felix.  He was found guilty, adjudicated, and sentenced to life imprisonment in 2007.  ECF No. 13 at 11, 17, and 22.  Jean Charles timely appealed to the State of Florida's Fourth District Court of Appeal, which affirmed his conviction and sentence in 2010.  ECF No. 13 at 29, 85–87.  Jean Charles then sought review from the Florida Supreme Court, but that court declined to accept jurisdiction.  ECF No. 13 at 94.  Jean Charles petitioned the Fourth District for a writ of habeas corpus, alleging ineffective assistance of counsel.  ECF No. 13 at 150–54.  The Fourth District denied the petition.  ECF No. 13 at 158.

Jean Charles then moved the trial court for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  He later supplemented that motion with a claim of newly discovered evidence consisting of eyewitness testimony.  ECF No. 13 at 160–97, 200–205.  After the trial court decided Jean Charles' motion was legally insufficient,

Jean Charles filed an amended motion in which he requested in part that the trial court hold an evidentiary hearing to establish a factual record. ECF No. 13 at 273. With the State's agreement, the trial court held an evidentiary hearing. ECF No. 14 at 1140. Following this hearing, the trial court denied the post-conviction motion. ECF No. 13 at 328. Jean Charles appealed, and the Fourth District per curiam affirmed the trial court's denial. ECF. No. 13 at 401. After his appeal was affirmed, Jean Charles petitioned this Court for a writ of habeas corpus pursuant to § 2254 and later filed an amended petition. ECF No. 1, 8.

## C. Timeliness

The State contends all grounds raised by Jean Charles in this petition are untimely and, therefore, barred from this Court's consideration. ECF No. 12 at 5–10. Section 2244 applies a time restriction to the filing for a writ of habeas corpus under section 2254, limiting petitioners to one year in which to petition the court:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment

or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)(A), (d)(2).

In its response, the State correctly calculates the periods of time between Jean Charles' final judgments and his filing of this petition as totaling more than 365 days. One hundred and ninety-two days elapsed between the date of Jean Charles' conviction and sentence becoming final on August 23, 2010,[2] and the date on which Jean Charles first moved for post-conviction review of his case on March 3, 2011. ECF No. 13 at 94, 96–98.

Jean Charles had post-conviction proceedings pending until May 8, 2020, when the Fourth District affirmed the trial court's order denying the motion for post-conviction relief. ECF No. 13 at 401, 403. Jean Charles did not initiate his federal petition under section 2254 until November 17, 2020, causing an additional lapse of 193 days. ECF No. 1. Between these two periods, Jean Charles' elapsed time totals 385 days. Although Jean Charles raises a new claim involving newly discovered evidence, 2244(d)(1)(D) prevents the clock from re-starting because Jean Charles admitted he first learned of the "newly discovered evidence" many years ago, while his direct appeal was still pending. Therefore, it appears Jean Charles' petition is time-barred.

### D. Exhaustion

The State contends two of the four grounds raised by Jean Charles in this petition are barred by section 2254's exhaustion provision, which prevents this Court from granting relief. Section 2254(b)(1)(A) requires an applicant to exhaust all available

---

[2] This is ninety days following the Florida Supreme Court's order declining to accept discretionary jurisdiction dated May 26, 2010. ECF No. 13 at 94.

remedies in state court before petitioning for a writ of habeas corpus in federal court.  28 U.S.C. § 2254(b)(1)(A).  The inclusion of this provision in the statute is designed "to give those [state] courts an 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Maldonado v. Jones*, No. 18-60061-CIV-BLOOM/VALLE, 2020 WL 5519312, at *13 (S.D. Fla. May 1, 2020), *report and recommendation adopted*, No. 18-60061-CIV-BLOOM/VALLE, 2020 WL 5517688 (S.D. Fla. Sept. 14, 2020) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

Without first raising the issues in state court, a petitioner, like Jean Charles, is procedurally barred where (1) "the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred;" or when (2) "the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default."  *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).

1. For Ground One, the State asserts Jean Charles' claim of newly discovered testimonial evidence has not yet been exhausted—and should, therefore, be dismissed for a failure to pursue all available remedies in state court—because while the claim was presented to and considered by the trial court, the claim was never explicitly presented to the state court as a federal constitutional issue.

2. On Ground Two, the State concedes the issue of whether counsel's performance was affected by a conflict of interest satisfies the exhaustion requirement because Jean Charles raised the claim in his post-conviction

motion, the trial court denied that claim, and the trial court's order was affirmed on appeal.

3. Ground Three, the State contends, is procedurally barred because the trial court ruled that Jean Charles should have raised the arguments concerning the cumulative effect of his counsel's alleged errors on direct appeal but failed to do so.  This ruling was affirmed on appeal.  The State argues Jean Charles cannot make that claim here after procedurally defaulting in state court.

4. On Ground Four, the State acknowledges the issue of whether counsel's decision not to call all available alibi witnesses violated Jean Charles' due process rights meets the exhaustion requirement because the claim was addressed at the evidentiary hearing on Jean Charles' post-conviction motion and denied by the trial court.  This order was affirmed on appeal.

Despite the apparent untimeliness of Jean Charles' petition and the potential that the petition includes unexhausted claims, the Court nonetheless considers the merits of his petition.

## STANDARD OF REVIEW

Section 2254 provides the standards by which a federal court must review a state prisoner's habeas corpus petition where there has already been a state court adjudication on the merits.[3]  *See* 28 U.S.C. § 2254(d)–(e)(1); *Harrington v. Richter*, 562 U.S. 86, 96-98 (2011).

---

[3] The Eleventh Circuit has noted these standards, adopted as part of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), *Pub.L. No. 104–132*, "place[] a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Crawford v. Head*, 311 F.3d 1288, 1295–96 (11th Cir. 2002) (quoting *Robinson v. Moore*,

In pertinent part, the statute provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.

The Eleventh Circuit has defined the statute's operative terms, "contrary to," "unreasonable application," and "clearly established Federal law":

> The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions.  A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case.
>
> A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case.  An

---

300 F.3d 1320, 1343 (11th Cir. 2002)) (internal quotation marks omitted).   "[A] state court's summary rejection of a claim qualifies as an adjudication on the merits under § 2254(d) so as to warrant deference."  *Ferguson v. Culliver,* 527 F.3d 1144, 1146 (11th Cir. 2008) (citing *Wright v. Moore,* 278 F.3d 1245, 1253–54 (11th Cir. 2002)).  The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law."  *Crawford*, 311 F.3d at 1296 (quoting *Robinson*, 300 F.3d at 1344) (internal quotation marks omitted).

unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. Notably, an "unreasonable application" is an "objectively unreasonable" application.

Lastly, § 2254(d)(1) provides a measuring stick for federal habeas courts reviewing state court decisions. That measuring stick is "clearly established Federal law." Clearly established federal law is *not* the case law of the lower federal courts, including this Court. Instead, in the habeas context, clearly established federal law refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision.

*Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (citations, footnotes, and internal quotation marks omitted) (alterations in original).

To obtain habeas corpus relief on a claim of ineffective assistance of counsel, a petitioner must show (1) that counsel's performance was deficient; and (2) that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

First, "[t]o establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Richter*, 562 U.S. 86 at 104 (quoting *Strickland*, 466 U.S. at 688). It is the petitioner's burden to demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The reviewing court applies a "'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter,* 562 U.S. 86 at 104 (quoting *Strickland*, 466 U.S. at 687).

Second, "[w]ith respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). A "reasonable probability"

is that which would be "sufficient to undermine confidence in the outcome"; not simply "errors that had some conceivable effect on the outcome of the proceeding." *Id.*

## EVIDENTIARY HEARING

Where the state record provides all pertinent facts, an evidentiary hearing in federal court is not needed. *See Schiro v. Landrigan*, 550 U.S. 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *see also* 28 U.S.C. § 2254(e)(2) (stating federal courts "shall not hold an evidentiary hearing" "unless the application shows" circumstances that are inapplicable to the instant Petition). The undersigned finds the record in this case is such that no evidentiary hearing is needed.

## ANALYSIS

Jean Charles raises four grounds for relief, one regarding court error and the remaining three suggesting ineffective assistance of counsel. First, Jean Charles alleges the trial court did not have competent, substantial evidence to support its finding that newly discovered eyewitness testimony was not credible. Second, Jean Charles contends his trial counsel was ineffective because counsel failed to disclose a conflict of interest. Third, Jean Charles makes ten claims of ineffective assistance of counsel, all previously raised to and rejected by the state court and raises four new issues addressing counsel's alleged failings; Jean Charles argues the cumulative effect of his counsel's errors warrants a new trial because those errors denied him a fair trial. Fourth and finally, Jean Charles alleges his counsel was ineffective for failing to call available alibi witnesses.

### 1.  Trial Court Finding Newly Discovered Evidence Was Not Credible

In his 2012 post-conviction motion, Jean Charles submitted a claim of newly discovered evidence in the form of eyewitness testimony from Emanuel O'Neal.[4]  In 2008, five years after the event, O'Neal signed an affidavit but did not give testimony until a further eleven years after that, in 2019, at the evidentiary hearing on Jean Charles' post-conviction motion.  ECF No. 13 at 208.  O'Neal testified he witnessed the shooting from beginning to end.  ECF No. 14 at 1194, 1196.  O'Neal stated he "looked directly in [the shooter's] face," and the man, who was both tall and fair skinned, did not match Jean Charles' description.  ECF No. 14 at 1194–96.  O'Neal stayed at the scene to help the victim but left when the first police officer arrived and told O'Neal to leave because it was a crime scene.  ECF No. 14 at 1198.

During cross-examination, O'Neal admitted he was convicted of multiple felonies and is serving a life sentence.  ECF No. 14 at 1203.  Cross-examination also noted multiple discrepancies in O'Neal's testimony, including how far away from the shooting O'Neal was standing and the skin color of the shooter.  ECF No. 14 at 1204, 1209.  O'Neal stated he never told anyone because the police officer at the scene was "belligerent," because he was concerned about his personal safety, and because the shooting became an afterthought after no one contacted him for a statement.  ECF No. 14 at 1219–22.

At the conclusion of the hearing, the trial court found Jean Charles failed to establish that the newly discovered evidence would have resulted in a different verdict.

---

[4] O'Neal's name is alternatively spelled "O'Neil" and "O'Niel" throughout the documents and transcripts.  Because his surname is printed as "O'Neal" on his affidavit, that is how his name will be spelled here.  Emanuel O'Neal is not related to defense witness Christopher O'Neal.

The trial court noted the evidence was not credible due to the length of time before reporting and due to multiple discrepancies and inconsistencies.  ECF No. 14 at 1403–1405.  Jean Charles now argues that finding was unsupported by competent, substantial evidence, while the State maintains the trial court properly noted multiple reasons why it did not find the evidence would likely have led to a different verdict.

Section 2254 provides federal courts only a limited scope of review because "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 2298 (2017) (quoting *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013)).  Instead, for a federal court to grant relief, the petitioner must show the state court's denial of the claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Tharpe*, 834 F.3d at 1337 (quoting 28 U.S.C. § 2254(d)(2)).  Therefore, claims under section 2254 present "a substantially higher threshold" because the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Jean Charles provides no specific evidence that the state trial court was objectively unreasonable in making its credibility determination or in deciding O'Neal's testimony was unlikely to lead to acquittal.  Absent any clear and convincing evidence on this matter, "[a] federal district court must give appropriate deference to a state court decision on the merits."  *Jones v. Florida*, No. 19-24051-CIV-BLOOM/REID, 2020 WL 2616219, at *2 (S.D. Fla. May 22, 2020) (quoting *Adams v. Sec'y, Florida Dep't of Corr.*, No. 3:17-509-J-39MCR-CIV-DAVIS, 2020 WL 2329551, at *1 (M.D. Fla. May 11, 2020)).  Likewise, "a

state court's decision to credit a[ ] [ ] witness's testimony is a factual finding, to which [courts] are obliged to defer, unless the petitioner rebuts the finding . . . ." *Jones*, 2020 WL 2616219, at *2 (quoting *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1315 (11th Cir. 2016)) (alterations in original).

Jean Charles fails to meet the high burden here.  Jean Charles has offered nothing but speculation to demonstrate that the state court's credibility determination was in error. The trial court based its determination on two reason-based conclusions, and without a specific showing from Jean Charles that the trial court's determination was objectively unreasonable, the petition on this ground should be denied.

### 2. Counsel's Failure to Disclose Criminal Investigation to Jean Charles

In 2016, Jean Charles amended his post-conviction motion to include a claim that his counsel, Hilliard Moldof, provided ineffective assistance due to his failure to disclose to Jean Charles a personal conflict of interest.  ECF No. 13 at 282–83.  At the time Moldof represented Jean Charles, he was under criminal investigation for witness tampering in an unrelated case, and Jean Charles contends this constitutes a conflict of interest that prevented Moldof from devoting 100% of his ability to defending Jean Charles.  ECF No. 13 at 283.

Moldof asserted Jean Charles knew of the ongoing investigation because he was present in the courtroom when a prospective juror notified the court he had heard of the case and when Moldof asked for a continuance based on the investigation.  ECF No. 14 at 1342–42, 1361–62.  While Moldof could remember neither a conversation in which he specifically notified Jean Charles of the investigation against him nor whether the trial judge had held a *Garcia* hearing in Jean Charles' case, Moldof remembered the court

was routinely holding hearings to notify defendants and knew that Jean Charles was present when the investigation was mentioned during court proceedings.  ECF No. 14 at 1360–65.  Moldof asserted he did his best for Jean Charles, as it was "what I do every time, the same way."  ECF No. 14 at 1347.

The trial court concluded Jean Charles' argument was inaccurate because no conflict of interest existed.  ECF No. 14 at 1409.  The trial court reasoned if there was no conflict of interest, there was no need for Moldof to disclose, and explained a conflict of interest meant "Moldof had to tell Jean Charles about something that would have given Moldof reason not to work hard for Jean Charles, not to work hard for him.  That is a conflict. . . .  But I'm not seeing the conflict, as I understand that phrase, the conflict of interest."  ECF No. 14 at 1409–10.

Even so, the trial court determined Jean Charles did know of the investigation.  ECF No. 14 at 1409–10.  The trial court conceded it was not clear to what extent Jean Charles knew about the investigation but felt satisfied Jean Charles did, at least, know of the investigation's existence, knew it had nothing to do with his case, and knew about these things before the jury was sworn.  ECF No. 14 at 1409–10, 12.  The trial court recalled Jean Charles had stated during his testimony that the investigation stemmed from a "case [that] was unrelated to mine" and concluded Jean Charles had failed to come "forward with evidence to convince this court that his lawyer's performance, Moldof's performance, fell below even a reasonably effective standard," to the extent that Jean Charles did not get a fair trial.  ECF No. 14 at 1409, 1252.

A claim of ineffective assistance of counsel based on a conflict of interest presents two necessary prongs: a petitioner "must establish (1) a conflict of interest that (2)

adversely affected [counsel's] performance." *Ochoa v. United States*, 45 F.4th 1293, 1298 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 1024 (2023) (citing *Herring v. Sec'y, Dept. of Corrs.*, 397 F.3d 1338, 1356–57 (11th Cir. 2005)).  A court is only obligated to hold a *Garcia* hearing where "a defendant chooses to proceed with representation by counsel *who has* a conflict of interest . . . ." *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (emphasis added).

"A conflict exists when defense counsel places himself in a position conducive to divided loyalties." *Garcia-Jasso*, 472 F.3d at 243 (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)).  "[T]he possibility of conflict is insufficient to impugn a criminal conviction.  In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).  "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.*

To satisfy the second prong of showing adverse effect, the petitioner must show "the conflict had some adverse effect on counsel's performance" and satisfy three elements.  *Buenoano v. Singletary*, 74 F.3d 1078, 1086 (11th Cir. 1996) (quoting *McConico v. Alabama*, 919 F.2d 1543, 1548 (11th Cir. 1990)).

> First, he must point to some plausible alternative defense strategy or tactic [that] might have been pursued.  Second, he must demonstrate that the alternative strategy or tactic was reasonable under the facts.  Because prejudice is presumed, the [defendant] need not show that the defense would necessarily have been successful if [the alternative strategy or tactic] had been used, rather he only need prove that the alternative possessed sufficient substance to be a viable alternative.  Finally, he must show some link between the actual conflict and the decision to forgo the alternative strategy of defense.  In other words, he must establish that the alternative

defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.

*United States v. Novaton*, 271 F.3d 968, 1011 (11th Cir. 2001) (quoting *Freund v. Butterworth*, 165 F.3d 839 (11th Cir. 1999)).

Here, Jean Charles satisfies neither prong.  As the trial court concluded, there is no actual conflict of interest in this case and no reason to believe Moldof did not represent Jean Charles to the best of his ability.  Despite Jean Charles' assertion that the trial court improperly concluded no conflict of interest existed, he has failed to show how the trial court reached the incorrect conclusion or provide evidence to indicate the alternative. Jean Charles acknowledged in his testimony that he understood Moldof was being investigated in a case wholly unrelated to his own.  Even though Jean Charles suggested that Moldof may have been working below his full potential on Jean Charles' case to curry favor with his investigators, Jean Charles has provided nothing more than speculation that Moldof failed to represent Jean Charles to the best of his ability.  Nor did Jean Charles show any adverse effect of the alleged conflict on Moldof's performance.

Because he has presented no evidence to support his claim, and because the trial court's rejection of the claim was neither contrary to nor an unreasonable application of federal law, Jean Charles' petition on this ground should be denied.

### 3. Cumulative Effect of Counsel's Errors Warrants a New Trial

Jean Charles claims his counsel made multiple errors that—due to the errors' cumulative effect—amount to a denial of his due process rights and require a new trial. Jean Charles raised these issues in his state post-conviction motion.  At the conclusion of the evidentiary hearing on the motion, the trial court determined the claims should have been brought to the state appellate court on direct appeal as grounds for reversible error

16

rather than grounds for ineffective assistance of counsel.  ECF No. 14 at 1406–07.  Jean

Charles later raised those errors on post-conviction appeal, and the Fourth District per

curiam affirmed the trial court's post-conviction order.  Jean Charles seeks to challenge

that finding.  The State objects, claiming this issue is not subject to this Court's review

because the trial court found the cumulative error claim procedurally defaulted for failure

to raise the claim on direct appeal.  While the State appears to have the right of it on this

issue, we nonetheless address petitioner's claim on the merits as at least some of the

allegations are raised here for the first time, and Jean Charles complains of cumulative

error.

Despite the lengthy list of errors Jean Charles submitted in his post-conviction motion,

in this petition, he touches on less than a handful, providing only a few additional

sentences reiterating the same statements.  The errors are as follows.

The errors alleged in the post-conviction motion:

1. The only eyewitness at the scene of the shooting did not see the shooter's face;
2. Jean Charles was the only person smiling in the photo lineup;
3. The 911 call should have been excluded;
4. The court refused to define abiding conviction;
5. The court refused to reach back for the civilian witnesses;
6. In closing argument, the State said, "Use your common sense, that footprint is Mr. Jean Charles.";
7. The photo lineup for another witness at the scene was never produced;
8. Counsel failed to object to Jean Charles facing a mandatory life sentence for a first-degree murder;
9. Counsel did a poor job on his judgment of acquittal argument; and
10. The trial judge let a poster board go back in the jury room.

The additional errors claimed in this petition:

11. Counsel failed to request an alibi defense jury instruction and an identification jury instruction;

17

12. Counsel failed to move for a new trial based on the weight of the evidence given the only eyewitness's inconsistent identification testimony;

13. Counsel failed to investigate another potential suspect whose fingerprint was identified at the scene; and

14. Counsel failed to obtain the FBI/Homeland Security file on informant Linndale Saunders to impeach his credibility.

"In addressing a claim of cumulative error, we must examine the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *United States v. Ladson*, 643 F.3d 1335, 1342 (11th Cir. 2011) (quoting *United States v. Calderon*, 127 F.3d 1314, 1333 (11th Cir. 1997)). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . [but may] dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . ." *Strickland*, 466 U.S. at 697. "Where there is no error or only a single error, there can be no cumulative error." *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011).

Review of the record shows the errors raised are either factually exaggerated or take issue with counsel's trial decisions that fall within the range of reasonably effective assistance. Other than his own claims to the contrary, Jean Charles provides no evidence or suggestion that the actions his counsel failed to take prejudiced his case or, if taken, would have enhanced his defense. Neither the trial court, which believed the issues better raised in another court, nor the state appellate court, which reviewed the errors and the trial court's determination and affirmed them, saw any credibility in Jean Charles' cumulative effect argument. Having reviewed the record, the undersigned finds that Jean Charles has failed to establish any individual errors here. It follows, then, that there is no cumulative error. The petition should therefore be denied on this ground.

### 4.  Counsel Failed to Call Available Alibi Witnesses

This issue was first raised in Jean Charles' second amended post-conviction motion and was addressed by the state court at the evidentiary hearing.  Jean Charles asserts he was denied effective assistance of counsel because Moldof failed to call available defense alibi witnesses Patricia Moxie, the mother of his two children, and David Jean Charles, his brother.  After interviewing potential witnesses, Moldof testified he considered it was best not to call any alibi witnesses due to their conflicting stories and the potential they would not be able to withstand cross-examination.  But Moldof did ultimately call one alibi witness—Christopher O'Neal—at Jean Charles' insistence.  ECF No. 14 at 1332–34.  However, Jean Charles wanted Moldof to call more alibi witnesses. *Id.*  According to Jean Charles' assertions, Moxie and David's testimony would have filled in the gaps in O'Neal's testimony and corroborated Jean Charles' own version of events. Jean Charles claimed that during the afternoon of the day of the shooting, he was riding dirt bikes and ATVs with friends, and during the time of the shooting, he was with his brother.

At the evidentiary hearing on the post-conviction motion, Patricia Moxie and David Jean Charles outlined what their testimony would have been.  Moxie testified she saw Jean Charles among a large group of men and boys riding bikes and ATVs across from her sister's home.  ECF No. 14 at 1162.  According to Moxie, Jean Charles was riding ATVs all day until a little after 9:00 p.m. when he and others put away the vehicles.  ECF No. 14 at 1164–65.  Moxie stated Jean Charles left shortly after. *Id.*  David Jean Charles testified Jean Charles had come to visit him before dark and stayed about two hours. David could not recall whether Jean Charles left before or after the time of the shooting—

around 9:00 p.m.—only that it was dark when Jean Charles left.  ECF No. 14 at 1180.
David also did not remember Jean Charles riding dirt bikes or ATVs earlier in the day.
ECF No. 14 at 1178; 1180.  The trial court concluded Moldof did not provide ineffective
assistance through his decision not to call Jean Charles' proposed alibi witnesses
because those witnesses provided stories that did not match.  ECF No. 14 at 1407–08.

It is the general duty of a criminal defendant's counsel "to reasonably investigate
avenues of defense."  *Stepp v. Jones*, No. 16-25170-CIV-ALTONAGA/WHITE, 2018 WL
9439863, at *6 (S.D. Fla. Aug. 29, 2018) (quoting *Blankenship v. Hall*, 542 F.3d 1253,
1273 (11th Cir. 2008)).  The performance of an attorney is judged by a "reasonably
effective assistance" standard when "considering all the circumstances," including "the
facts of the particular case, [as] viewed as of the time of counsel's conduct."  *Strickland*,
466 U.S. at 669; 690.  "Judicial scrutiny of counsel's performance must be highly
deferential, and . . . must indulge a strong presumption that counsel's conduct falls within
the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 669.

"Counsel's performance is deemed to be deficient only if the petitioner can show
that 'no competent attorney' would have failed to pursue the defense, given the facts
known to counsel at the time."  *Murray v. United States*, No. 18-13843-E, 2019 WL
12337894, at *7 (11th Cir. June 19, 2019) (quoting *Martinez v. Sec. Fla. Dep't of Corr.*,
684 F. App'x 915, 923 (11th Cir. 2017)).  "Prejudice occurs when there is a 'reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding would
have been different.'  A 'reasonable probability' is one sufficient to undermine confidence
in the outcome."  *Murray,* 2019 WL 12337894, at *7 (quoting Strickland, 466 U.S. at 693–
94).

The trial court did not err in determining Jean Charles' counsel's assistance did not fall below a reasonable standard of effectiveness for failing to present all of Jean Charles' proposed alibi witnesses to the jury.  Moldof chose to present a solitary alibi witness that he believed would be best for the overall case.  A decision not to present additional witnesses where the testimony conflicted—and from two people extremely close to Jean Charles—would, as the trial court noted, not only not have helped Jean Charles' defense but also could have affirmatively damaged his case.  Given the wide latitude afforded to counsel to construct and present strong defenses for their clients and to make strategic trial decisions, Jean Charles' counsel's performance was not deficient—and did not fall below the reasonably effective standard—simply because he chose not to present conflicting alibi testimony.  The trial court did not err in concluding the same, and its ruling is not contrary to, and did not involve an unreasonable application of, clearly established federal law.  Therefore, the petition should be denied on this ground.

## CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").  *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009).  This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  After careful consideration of the record, the undersigned recommends that this Court should not issue a certificate of appealability.

## RECOMMENDATION

For the reasons set forth above, the undersigned hereby RECOMMENDS the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 1, be DENIED.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE and SUBMITTED at Fort Lauderdale, Florida, this 31st day of January 2024.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Roy K. Altman
All Counsel of Record